**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MICHAEL COSTELLO AND AMBER COSTELLO** | * | **CIVIL ACTION NO. 25-822** |
| | * | **JUDGE ELDON E. FALLON** |
| **VERSUS** | | |
| | * | **MAGISTRATE JUDGE MICHAEL B. NORTH** |
| **HOME DEPOT U.S.A., INC.** | | |
| * * * * * * | * | |

**ORDER & REASONS**

Before the Court is a Motion for Summary Judgment pursuant to of Federal Rule of Civil Procedure 56(a) filed by Defendant Home Depot, U.S.A., Inc. ("Home Depot"). R. Doc. 29. Plaintiffs Michael and Amber Costello ("Costello") opposed the Motion. R. Doc. 36. Home Depot replied. R. Doc. 37. Having considered the parties' briefing, the applicable law, and the record, the Court **DENIES** Home Depot's Motion.

## I. BACKGROUND

On July 15, 2024, Michael Costello and his son went to the Home Depot store in Slidell, Louisiana, to purchase straw for their landscaping business. R. Doc. 29-1 at 1. The Costellos had previously purchased straw from this Home Depot location on several occasions. *Id*. At this time, Home Depot stored its straw inventory in a trailer located in the store's parking lot, across from the Garden Center. *Id.* at 2. Customers purchasing straw were required to first pay for the straw inside the store and then meet a Home Depot employee at the trailer to present their receipt, retrieve the straw, and load it into their vehicle. R. Doc. 36-3 at 21. The Garden Center sprinklers turned on automatically around 3 a.m., and turned off around 9 a.m. R. Doc. 29-1 at 2. The water from the sprinklers flowed from the Garden Center, across the parking lot, and into a drain by the straw trailer, leaving a consistently wet area in the parking lot. *Id.*

On the day of the incident, the Costellos parked their truck approximately ten feet from the straw trailer and entered the store to purchase the straw. *Id.* at 2. After completing the purchase, Mr. Costello walked from his truck toward the trailer to present his receipt to the Home Depot employee and retrieve the straw. *Id.* After walking approximately five feet from his truck, near the trailer's ramp, Mr. Costello alleges that he slipped on algae on the ground. R. Doc. 29-4 at 1. Following the incident, Mr. Costello returned to the Home Depot store and reported the fall to the store manager. R. Doc. 29-1 at 3.

Costello alleges that he suffered injuries to his neck, back, right shoulder, and extremities as a result of his fall. R. Doc. 1-3 at 2. His wife alleges that she sustained a loss of consortium, loss of support, and loss of services. *Id.*

## II. PRESENT MOTION

Home Depot moves for summary judgment on all claims. In its Motion, Home Depot argues that the alleged hazard, the algae on which Mr. Costello fell, was not unreasonably dangerous because it was open and obvious. R. Doc. 29-3 at 1. To this end, Home Depot contends that the deposition testimony establishes that the parking lot was wet and that green algae near the straw trailer were openly visible. *Id.* at 11. Home Depot maintains that it cannot therefore be held liable for Mr. Costello's injuries or the dependent loss of consortium claim. *Id.*

In opposition, Mr. Costello disputes Home Depot's characterization of the hazard as open and obvious, arguing that the algae were concealed by dirt and debris and therefore not readily apparent. R. Doc. 36 at 1–2. In its reply, Home Depot reiterates its position that the algae were open and obvious, in addition to a broader argument that, under the four-factor risk/utility test, the hazard was not unreasonably dangerous. R. Doc. 37.

## III. LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).

## IV. DISCUSSION

Summary judgment is not appropriate because genuine issues of material fact remain regarding whether the hazardous condition was unreasonably dangerous. Louisiana premise owners have a "duty to keep [their] premises in a reasonably safe condition." *Farrell v. Circle K Stores, Inc.*, 2022-00849 (La. 3/17/23), 359 So. 3d 467, 473. This includes the duty to "discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence." *Id.* Whether the owner has breached that duty is evaluated using a risk/utility balancing test. *Id.* at 474. This test encompasses four factors:

> (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature.

*Id.* at 474.

The ultimate inquiry in weighing these factors is whether the condition at issue was "unreasonably dangerous." *Id.* at 478. Although this is a mixed question of law and fact, summary judgment may be appropriate when there is no evidence that the condition at issue was unreasonably dangerous. *Id.* at 474.

Home Depot's Motion for Summary Judgment is devoted almost entirely to arguing that the algae were open and obvious. Whether this condition was open and obvious is one sub-factor, within one factor, within this four-factor balancing test. It does not, on its own, conclusively resolve whether the condition was unreasonably dangerous, and, by extension, whether the defendant breached its duty. *Id.* at 478. The Louisiana Supreme Court has made this point clear. *Id.* ("[W]hether a condition is open and obvious is embraced within the breach of the duty element of the duty/risk analysis and is not a jurisprudential doctrine barring recovery, but only a factor of the risk/utility balancing test."). The Court, therefore, will analyze all four factors before turning to the ultimate question of whether there is any genuine dispute of material fact that the condition was unreasonably dangerous.

**A. The Utility of the Hazard**

A condition that was designed or intended to be part of the premises will "generally have social utility, and in the balancing test, weigh against a finding that the premises was unsafe." *Id.*; *see also Miller v. Albertson's Co.*, LLC, 2023-0527 (La. App. 1 Cir. 12/27/23), 381 So. 3d 84, 90 (asking whether the condition was "intended or present by design"). The focus of this inquiry is the condition which created the hazard—not necessarily the hazard itself. *See Farrell*, 359 So. 3d at 474 (examining the utility of the stagnant water which caused the slip hazard).

The Garden Center was sloped such that water from the Center's sprinkler system drained into the parking lot beside the straw trailer. R. Docs. 36-3 at 8, 36-3 at 4–5, 29-1 at 2. It is undisputed this runoff created the algae on which Mr. Costello fell. R. Docs. 36-3 at 4–5, 29-1 at 2. This runoff had utility because it redirected the water away from retail areas. R. Doc. 36-3 at 8. That usefulness was partially offset, however, because the water flowed into another area that some customers had to access to retrieve straw. R. Doc. 36-3 at 21. On balance then, this condition weighs partially in favor of finding the slip hazard that caused Mr. Costello's fall was not unreasonably dangerous.

**B. The Likelihood and Magnitude of the Harm**

The second factor "asks the degree to which the condition will likely cause harm." *Bartlett v. A-1 Serv. Co. of Houma, LLC*, 2023-1016 (La. App. 1 Cir. 4/17/24), 389 So. 3d 158, 165. Several sub-factors are relevant to this determination including the hazard's location, inherent risk, and obviousness. *See Farrell*, 359 So. 3d at 474–79. Home Depot's argument on this factor rests on two points: that the algae were open and obvious, R. Doc. 29-3 at 11, and that the algae were located in an area that "nobody visits." R. Doc. 37 at 4.

"For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it." *Farrell*, 359 So. 3d at 474–79. The record paints a mixed picture as to whether this standard is met. For instance, Home Depot employee Earl Bauer testified that he had observed algae near the trailer on prior occasions, R. Doc. 36-3 at 11, but when asked specifically whether he noticed the presence of algae patches on the day of the incident, he responded only, "I guess so." *Id.* at 16. His hesitation appeared to stem from his observation that the algae appeared abnormally "dark." *Id.* Manager John Betts testified that he observed algae after the accident but that the algae were covered by "a lot of dirt." R. Doc. 36-4 at 12. Mr. Costello's

son likewise testified only that he observed the wet pavement from ten feet away, but did not mention the presence of algae. R. Doc. 36-5 at 4, 6–7. Based on this conflicting evidence, doubts remain about the algae's apparentness. The Court must resolve these doubts in favor of Mr. Costello, *see Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001), and assume that the hazard was not "open and obvious to all," as the law demands. *See Farrell*, 359 So. 3d at 474–79.[1]

A similar conflict exists with respect to the slickness of the area. Home Depot suggests the algae were not a slip hazard because they were covered in dirt, citing the deposition testimony of Betts. R. Doc. 36-4 at 12. Mr. Costello, on the other hand, testified that the area was covered in "a lot of slime." R. Doc. 36-2 at 12. The Court resolves this fact dispute in Mr. Costello's favor and assumes the algae were a slip hazard.

Finally, the location of the hazard heightened its risk. The key consideration is whether the hazard was located in area "where patrons would likely encounter it or be forced to encounter it." *Farrell*, 359 So. 3d at 475. Home Depot's suggestion that the accident site was a "dead zone," R. Doc. 37 at 4, is undercut by evidence that customers purchasing straw were required to visit the site to pick up their purchase. R. Doc. 36-3 at 21. While it may not have been the most heavily trafficked area on Home Depot's grounds, it was one that some patrons, including Mr. Costello, were "forced to encounter."

Having considered these sub-factors and resolving genuine fact disputes in Mr. Costello's favor, the Court finds the likelihood of harm was appreciable and weighs this factor in favor of a finding that the hazard was unreasonably dangerous.

---

[1] The cases cited by Defendant do not require a different result. Defendant relies on, *Martin v. Boyd Racing, L.L.C.*, 681 F. App'x 409, 413 (5th Cir. 2017), and *Tyler v. Brookshire Bros., Ltd.*, No. 16-CV-0446, 2017 WL 4227480, at *3 (W.D. La. July 14, 2017), *report and recommendation adopted*, No. 2:16-CV-446, 2017 WL 4208639 (W.D. La. Sept. 20, 2017), both of which affirmed summary judgment for the defendant where the plaintiff presented no evidence suggesting that the slip hazard was not open and obvious. Those cases are distinguishable from the case at hand. Here, Mr. Costello has presented evidence creating a genuine dispute as to whether the alleged hazard was actually visible and apparent.

**C. Cost of Preventing the Harm**

The record suggests there were cost-effective methods Home Depot could have used to prevent the algae. First, Home Depot could have intermediately hosed off the area. Bauer testified that he occasionally removed algae from the sales floor using this method. R. Doc. 36-3 at 12. Second, as Mr. Costello notes in his opposition, Home Depot could have simply moved the straw trailer out of the direct line of the Garden Center runoff. R. Doc. 36 at 8.[2]

The Court must draw from these facts all reasonable inferences in Mr. Costello's favor. *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir. 1984). Thus, while the record does not establish the exact cost of these prevention methods, it is reasonable to assume the cost would be minimal. Techniques like hosing down slick floors were already part of Home Depot's own policies for addressing wet or hazardous conditions, while moving the trailer would have been a one-time fix. Because a low cost of prevention makes it easier, not harder, to find that Home Depot acted unreasonably in failing to address the hazard, this factor weighs in favor of finding the hazard was unreasonably dangerous.

**D. Social Utility of Plaintiff's Activity**

The fourth factor considers the social utility of the plaintiff's activity, or whether that activity was dangerous by nature. *Farrell*, 359 So. 3d at 479. Courts weigh this factor lightly. *Id.*

Mr. Costello was walking from his truck to the straw trailer to retrieve straw for his landscaping business. R. Docs. 29-1 at 1, 29-6 at 4. This activity had social value and was not inherently dangerous. *See Farrell*, 359 So. 3d at 479 (walking a dog has social utility); *Miller*, 381

---

[2] In its Reply, Home Depot argues that the Court may only consider this factor after first determining that there is an unreasonable risk of harm under the second factor. R. Doc. 37 at 5. Home Depot cites no authority for this sequencing, and it is inconsistent with the Louisiana Supreme Court's approach in *Farrell*, where the court weighed all four factors notwithstanding its conclusion that the likelihood and magnitude of the harm was minimal. *See Farrell* 359 So. 3d at 474–79.

So. 3d at 91 (walking through a parking lot to enter a store has social utility). This factor therefore weighs moderately in Mr. Costello's favor.

## V. CONCLUSION

Weighing the four risk-utility factors together, the balance does not favor summary judgment. The first factor, the utility of the drain, favors Home Depot, and the fourth, the social utility of Mr. Costello's errand, is at most a modest consideration that does not weigh heavily. *See Farrell*, 359 So. 3d at 479. The third factor, however, favors Mr. Costello: the record suggests the cost of prevention was low. The second factor contains disputed evidence regarding the apparentness and slickness of the algae, which the Court must resolve favorably to Mr. Costello. The Court additionally finds it significant that the algae were located in an area that customers were required to travel, and, in keeping in line with *Farrell's* guidance, *see* 359 So. 3d at 475, views this consideration with appreciable weight.

Ultimately, the evidence, viewed in the light most favorable to Mr. Costello as the nonmoving party, does not permit the Court to conclude that no reasonable factfinder could find that the hazard was not unreasonably dangerous.

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Home Depot's Motion for Summary Judgment, R. Doc. 29, is hereby **DENIED.**

New Orleans, Louisiana, this 25th day of August, 2026.

Eldon E. Fallon

THE HONORABLE ELDON E. FALLON